**UNITED STATES DISTRICT COURT
IN THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BT INS, INC. | ) |
|       Plaintiff, | ) |
| v. | ) |
| UNIVERSITY OF MASSACHUSETTS, and BOARD OF TRUSTEES FOR THE UNIVERSITY OF MASSACHUSETTS, in their official capacities. | ) Civil Action No. |
|       Defendants. | ) |

## COMPLAINT AND JURY DEMAND

Plaintiff BT INS, Inc. ("Plaintiff"), by its attorneys, Proskauer Rose LLP, brings this action to collect on a debt the University of Massachusetts ("UMass") owes, alleging, upon personal knowledge and information and belief as to other matters, as follows:

## INTRODUCTION

1. BT INS is a global leader in providing network and informational technology services.

2. On or about March 1, 2007, International Network Services Inc. ("INS"), a predecessor-in-interest to BT INS, Inc. (collectively with Plaintiff, "BT INS") and the President's Office of UMass entered into a Contract for Services (including an attached Statement of Work ("SOW") modified in part by an Addendum No. 1 (together, the "Contract") in which the Defendants agreed to pay BT INS on a time-and-materials basis in connection with network security testing services, also called "ethical hacking." BT INS performed the

contracted-for services and produced progress reports and other deliverables as required under the Contract.

3.  BT INS invoiced Defendants approximately $244,052.85 for time and materials expended under the contract.

4.  Despite repeated promises from Defendants to complete performance under the Contract and instead of performing under the Contract, on or about January 18, 2008, the Defendants unilaterally terminated the Contract without paying the monies owed to BT INS. Despite the language of the Contract providing the "University shall promptly pay the Contractor for all services performed to the effective date of termination," Defendants have thus far refused to pay for any of the time or materials BT INS expended.

5.  Moreover, Defendants, on their website admit BT INS provided the contracted-for services, stating as follows:

> In Spring of 2007, the University engaged BT INS, Inc. to conduct an Ethical Hacking & Security Risk Assessment across all sectors of the University.  This assessment was scheduled as part of the ongoing effort at the University to ensure the integrity, confidentiality, and availability of all networks and systems at the University…*This assessment provided the University with a detailed report of all vulnerabilities detected along with an assessment of the associated risk levels and a recommended remediation plan for each vulnerability reported*.  The engagement summary will be utilized by the University as the roadmap for addressing all vulnerabilities.

(Exh. C, attached (emphasis added) (www.massachusetts.edu/it/uitsannual07support.html)).

6.  As a result of Defendants' persistent refusal to pay BT INS for time and materials expended and which "provided the University with a detailed report of all vulnerabilities detected…and a recommended remediation plan for each vulnerability reported," BT INS now brings this action for monetary damages as well as equitable relief to redress Defendants' breach

of the Contract under the theories of breach of contract, breach of the implied covenant of good faith and fair dealing, quantum meruit, promissory estoppel, violation of Massachusetts General Laws chapter 93A section 11, and on account annexed.

## PARTIES

7. Plaintiff, BT INS, Inc. ("BT INS"), is a Delaware corporation with a principal place of business at 1600 Memorex Drive, Suite 200, Santa Clara, CA 95050.

8. On information and belief, Defendant, UMass, is a Massachusetts state-funded educational institution of higher learning organized under the General Laws of Massachusetts, title XII, Chapter 75 *et seq.*, with campuses at Amherst, Boston, Dartmouth, Lowell, and Worcester. The President's Office, which is a party to the Contract, is responsible for overseeing all aspects of UMass and has a principal place of business at 225 Franklin Street, 33rd Floor, Boston, MA 02110. Michael D. Poole, Assistant Vice President and University Chief Technology Officer, and David J. Gray, VP for Information Technology and University CIO, signed the Contract within the scope of their authority on behalf of the President's Office.

9. On information and belief, Defendant, Board of Trustees for the University of Massachusetts in their official capacities ("Board"), is composed of nineteen voting members and three *ex officio* non-voting members, elected or appointed by Dr. Wilson as the President of UMass, and has a principal place of business at 225 Franklin Street, 33rd Floor, Boston, MA 02110.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) as Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

11. Venue is proper in the United States District Court for the District of Massachusetts, Eastern Division, pursuant to 28 U.S.C. § 1391(a) and Local Rule 40.1(D).

12. Upon information and belief, Defendants are subject to personal jurisdiction in Massachusetts.

13. Section 16 of the Contract provides

> This Contract shall be construed under and governed by the laws of the Commonwealth of Massachusetts. [BT INS] agrees to bring any federal or state legal proceedings arising under this Contract in which the Commonwealth or the University is a party, in a court of competent jurisdiction within the Commonwealth of Massachusetts…

## FACTUAL ALLEGATIONS

A. <u>The Contract</u>

14. On or about July 19, 2006, UMass issued a Request for Proposal entitled "University System-wide Data/System Privacy, Security and Risk Assessment," which sought a vendor to conduct system-wide reviews and tests of UMass' computer network security to identify risks and vulnerabilities and make recommendations. The University Information Technology Services Department sponsored the Request for Proposal.

15. In response to the Request for Proposal, BT INS' predecessor International Network Services submitted a bid for the contract and a comprehensive Statement of Work (the "SOW").

16. On or about February 1, 2007, BT Group plc announced that it agreed on terms to acquire International Network Services, Inc.

17. On or about February 25, 2007, International Network Services started to operate as a subsidiary of BT United States under the name BT INS, Inc.

18. On or about March 1, 2007, International Network Services and the President's Office entered into the Contract. A true copy of the Contract for Services – Long Form, Addendum No. 1, and the SOW (together, "the Contract") are attached as Exhibit A. The "Contract for Services – Long Form" incorporates, in § 1, the SOW, which was attached thereto as Attachment A.

19. Upon information and belief, the Board approved the Contract.

20. The parties agreed that the work would be performed on a time and materials basis at the rate of $105.00 per hour, plus expenses. The Contract provided a cap of $268,500, including travel expenses not to exceed $18,500.

21. The term of the Contract was March 1, 2007 to December 31, 2007. With respect to termination, § 7 of the Contract provided:

> Termination: The Contract may be terminated without cause by either party by giving written notice to the other at least thirty (30) calendar days prior to the effective date of termination stated in the notice. If Contractor fails to fulfill his/her obligations, the University may terminate this contract by giving written notice to the Contractor at least seven (7) calendar days before effective date of termination stated in the notice. The notice shall state the circumstances of the alleged breach and may state a period during which the alleged breach may be cured, which cure shall be subject to the approval of the University.

22. In the event of termination, § 8 of the Contract further provides:

Obligations in Event of Termination:

> a. Upon termination, all finished and unfinished documents, data, studies, and reports prepared by the Contractor pursuant to this Contract, shall become the property of the University.
>
> b. The University shall promptly pay the Contractor for all services performed to the effective date of termination, subject to indemnification provisions of Clause 18 hereof and subject to offset of sums due the Contractor against sums owed by the Contractor to the University.

23.     The Contract further provides in § 4F that "[t]he University's payment terms are Net 30 days from the date of receipt of vendor's invoice, with late penalty interest assessable at rates established by the Commonwealth, after 45 days, in accordance with M.G.L. C29, s29C, and with Commonwealth Regulation 815 CMR 4.00."

B.     <u>BT INS Continues Providing Services Despite Changes to the Scope of Work</u>

24.     BT INS commenced work under the Contract, which involved extensive communication with information technology officials at all UMass campuses, travel to the campus facilities, and extensive network, hardware, and software testing. Beginning in or about July 2007, BT INS delivered to UMass the first in a series of scheduled project documents and reports.

25.     At least as early as August 2007, UMass requested changes to the SOW, including the form and content of project deliverable documents. BT INS accommodated UMass' requests in good faith without requiring a formal change order.

26.     BT INS continued to work with UMass to complete work under the Contract. Despite some communication difficulties between the parties, BT INS completed the majority of the work items required under the Contract and delivered all required reports to UMass in the form requested. Due to the Defendants' delays and ultimate termination of the Contract, BT INS was unable to complete one item specified in the SOW. At all times relevant to this action, BT INS was ready, willing, and able to complete all work in accordance with the SOW.

27.     From about October to December 2007, various communications from UMass to BT INS restated UMass' commitment to the project and led BT INS to believe that UMass intended to perform under the contract. These communications also led BT INS to believe that UMass intended to pay BT INS for the work BT INS performed under the contract.

28. On or about January 18, 2008, UMass' IT representative sent an email message to BT INS purporting to terminate the Contract for cause "effective immediately," despite the Contract's requirement of thirty (30) days notice. The termination email failed to "state the *circumstances* of the alleged breach" under the 7-day notice period of § 7 of the Contract, other than a legal conclusion of "non-performance on the part of BT INS." The termination email further failed to "state a period during which the alleged breach may be cured," also as set forth in § 7 of the Contract. Attached as Exhibit B is a true and correct copy of the termination email.

29. At the time of the purported termination, BT INS had completed and invoiced work and expenses totaling $244,052.85. Upon information and belief, additional non-invoiced work and expenses accrued from Defendants' changes to the SOW and BT INS' accommodation of the changes.

30. UMass' website, which was last updated on February 8, 2008, almost a month after UMass terminated the Contract, states

> [i]n Spring of 2007, the University engaged BT INS, Inc. to conduct an Ethical Hacking & Security Risk Assessment across all sectors of the University. This assessment was scheduled as part of the ongoing effort at the University to ensure the integrity, confidentiality, and availability of all networks and systems at the University." The website goes on to state that the "assessment provided the University with a detailed report of all vulnerabilities detected along with an assessment of the associated risk levels and a recommended remediation plan for each vulnerability reported. The engagement summary will be utilized by the University as the roadmap for addressing all vulnerabilities."

Attached as Exhibit C is a true and correct copy of UMass' website printed on May 19, 2010.

31. Despite UMass' public admission that BT INS provided "a detailed report of all vulnerabilities detected along with an assessment of the associate risk levels and a recommended remediation plan" and stating that UMass will utilize the BT INS report "as the roadmap for

7

addressing all vulnerabilities," UMass refused to pay for any of the work performed and duly invoiced under the Contract. UMass has also failed to pay late penalty interest.

## COUNT I
### (Breach of Contract)

32. BT INS alleges and incorporates by reference the allegations in the preceding paragraphs.

33. BT INS and UMass entered into a binding and legally-enforceable contract under which UMass agreed to pay BT INS for security and risk assessment services.

34. BT INS fully performed the security and risk assessment services and incurred expenses under the Contract on an agreed-upon time and materials basis.

35. BT INS delivered the required documents and reports to UMass and remained ready, willing, and able to fully perform by delivering any allegedly undelivered documents at the time UMass unilaterally breached the contract.

36. BT INS timely invoiced the services and expenses performed under the Contract.

37. UMass unilaterally breached the contract by refusing to make the payments owed to BT INS under the plain language of the Contract.

38. As a direct and proximate result of UMass' breach, BT INS has suffered, and continues to suffer, substantial damages as follows:

    a. The loss of not less than the $244,052.85, owed to BT INS under the Contract; and

    b. late penalty interest, as provided by the Contract.

## COUNT II
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

8

39. BT INS alleges and incorporates by reference the allegations in the preceding paragraphs.

40. UMass and BT INS entered a legally-enforceable and binding contract that contained an implied covenant of good faith and fair dealing.

41. By Defendants' wrongful conduct in failing to pay BT INS the payments due under the Contract for the extensive work BT INS performed under the time and materials Contract, the Defendants' have knowingly and willfully breached their implied-in-law obligation to treat BT INS fairly and in good faith.

42. The plain language of the Contract requires UMass to promptly pay BT INS upon termination of the Contract, and UMass has refused to do so.

43. As a direct and proximate result of the Defendants' breach of the covenant of good faith and fair dealing, BT INS has suffered, and continues to suffer, harm for which it is entitled to an award of monetary damages and other relief.

### COUNT III
### (Quantum Meruit)

44. BT INS alleges and incorporates by reference the allegations in the preceding paragraphs.

45. BT INS and UMass entered into a binding and legally-enforceable contract under which UMass agreed to pay BT INS for security and risk assessment services.

46. UMass engaged BT INS to perform certain work on a time and materials basis in connection with the testing and evaluation of UMass' computer network.

47. In reliance upon UMass' contractual obligation to pay for the services performed, BT INS, in good faith, performed services and incurred expenses for the benefit of UMass, with the intention of fully performing its obligations under the Contract.

48. BT INS substantially performed its obligations under the Contract.

49. Despite demands from BT INS, UMass refused to pay for the value of the services BT INS performed and expenses incurred.

50. As a direct and proximate result of the Defendants' failure to pay BT INS for the work performed under the contract, BT INS has suffered, and continues to suffer, damages.

## COUNT IV
### (Promissory Estoppel)

51. BT INS alleges and incorporates by reference the allegations in the preceding paragraphs.

52. BT INS continued to perform under the Contract based on the Defendants' representations and communications that the Defendants' wanted to complete the work under the Contract.

53. In reasonable and foreseeable reliance on the Defendants' representations and communications, BT INS continued to perform under the Contract on the belief that BT INS would be paid for its work as required by the plain terms of the Contract, despite Defendants' requests to the original SOW.

54. Based on BT INS's reasonable and foreseeable detrimental reliance on the Defendants' promises, the Defendants are estopped from denying BT INS fair and adequate compensation as required under the Contract.

55. The Defendants have willfully, and without cause, refused to pay BT INS the compensation promised to it under the Contract, resulting in a gross injustice if the Defendants' promises are not enforced.

56. As a direct result of BT INS' reasonable and foreseeable reliance upon the promises made by the Defendants concerning the their continued representations and

communications that they wanted to complete the contract, BT INS has suffered, and continues to suffer, substantial damages, including, but not limited to, the loss of the money owed to BT INS under the Contract, including interest.

## COUNT V
### (Violation of Massachusetts General Laws Chapter 93A, Section 11)

57.     BT INS alleges and incorporates by reference the allegations in the preceding paragraphs.

58.     At all relevant times, BT INS and the Defendants were engaged in trade or commerce in the Commonwealth of Massachusetts, and the transactions constituting the unfair or deceptive trade practices occurred primarily within the Commonwealth, at UMass' facilities.

59.     The Defendants and BT INS entered a legally-enforceable and binding contract.

60.     The unfair and deceptive trade practices of the Defendants, include the Defendants' knowing and willing conduct in violation of the terms of the Contract, including at least Defendants':

   a.   intentional, unilateral breach of the Contract;

   b.   knowing and willful breach of the implied covenant of good faith and fair dealing;

   c.   continued promises to perform under the Contract, knowingly and willfully made, which induced BT INS to continue to perform under the Contract, and without intent to pay BT INS for the work BT INS performed; and

   d.   knowing and willful advertisement that BT INS, in fact, satisfied its obligations under the contract to provide "a detailed report of all vulnerabilities detected along with an assessment of the associate risk levels and a recommended

remediation plan" that Defendants utilized "as the roadmap for addressing all vulnerabilities," while refusing to pay for any of the work.

61. As a direct and proximate result of the Defendants' unfair and deceptive trade practices, embodied by Defendants' failure to pay BT INS for the work performed under the Contract despite repeated promises to perform without intending to perform and thereafter publicly admitting that BT INS did in fact perform, BT INS has suffered, and continues to suffer, actual loss and harm for which it is entitled to an award of monetary damages and other relief.

## COUNT VI
### (Account Annexed)

62. BT INS alleges and incorporates by reference the allegations in the preceding paragraphs.

63. BT INS rendered services for which Defendants promised to pay a determinable amount up to and including $268,500.

64. Defendants have refused to pay the promised amount, and are therefore liable for, for the services BT INS rendered and expenses incurred under the common counts as stated in the Account Annexed as Exhibit D.

## **REQUEST FOR RELIEF**

WHEREFORE, BT INS prays that this Court grant judgment in favor of BT INS, Inc. and award it damages, doubled or trebled, with interest as provided for in the Contract, costs and attorneys' fees, and pre-judgment interest on such amounts, together with such other relief as the Court determines to be just and equitable.

## **JURY DEMAND**

BT INS claims a trial by jury of all issues so triable.

                                            Respectfully submitted:

                                            BT INS, INC.,

                                            By its attorneys:

                                            */s/ John W. Pint*
                                            Steven M. Bauer (BBO No. 542531)
                                            Daniel B. Winslow (BBO No. 541972)
                                            John W. Pint (BBO No. 660548)
                                            Proskauer Rose LLP
                                            One International Place
                                            Boston, MA 02110
                                            Phone:  (617) 526-9600
                                            Fax:  (617) 526-9899
                                            sbauer@proskauer.com
                                            dwinslow@proskauer.com
                                            jpint@proskauer.com

Dated: June 23, 2010