```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


BT INS, INC.,                         )
                                      )
     Plaintiff,                       )
                                      )      CIVIL ACTION NO.
v.                                    )      10-11068-DPW
                                      )
UNIVERSITY OF MASSACHUSETTS and       )
BOARD OF TRUSTEES FOR THE UNIVERSITY  )
OF MASSACHUSETTS                      )
                                      )
     Defendants.                      )
```

## MEMORANDUM AND ORDER
### October 19, 2010

BT INS, Inc., filed this lawsuit against the University of Massachusetts ("UMass") and its Board of Trustees (collectively, the "defendants") alleging breach of contract and other related state law claims arising out of a contract for computer services entered into by BT INS and UMass.  UMass has moved to dismiss the complaint for want of subject matter jurisdiction on the ground that UMass and the Board of Trustees, as arms of the Commonwealth of Massachusetts, are entitled to immunity from suit under the Eleventh Amendment of the United States Constitution.  I will grant the motion to dismiss on that ground.

### I. BACKGROUND

As I must when considering a motion to dismiss, I accept all well-pleaded factual allegations in the complaint as true and resolve any inferences in BT INS's favor.  *See Cooperman v. Individual, Inc.*, 171 F.3d 43, 46 (1st Cir. 1999).

1

On March 1, 2007, UMass entered into a contract with International Network Services Inc., a predecessor-in-interest to BT INS.  (Compl. ¶¶ 2, 15.)  The contract consisted of a Contract for Services, which had been included in the bidding process, an attached Statement of Work, and an Addendum No. 1 to that Statement of Work.  (Compl. ¶ 2.)  Under the contract, BT INS was to perform various network security testing services, and UMass was to compensate BT INS for any work performed under the contract on a "time-and-materials basis."  (Compl. ¶ 2.)

BT INS began performance, including submitting progress reports, and invoiced UMass nearly $250,000 for the services rendered.  (Compl. ¶¶ 2-3.)  However, on approximately January 18, 2008, before BT INS could complete performance, UMass terminated the contract without paying the invoices.  (Compl. ¶ 4.)  A subsequent communication from UMass said the termination was due to "non-performance on the part of BT INS."  (Compl. ¶ 28.)

On June 23, 2010, BT INS filed suit against UMass and its Board of Trustees in their official capacities, asserting Massachusetts state law claims of breach of contract, breach of the implied covenant of good faith and fair dealing, *quantum meruit*, promissory estoppel, and account annexed.  (Compl. ¶¶ 32-56, 62-64.)  BT INS also brought a statutory claim under Massachusetts General Laws Chapter 93A, § 11, alleging unfair and

deceptive trade practices. (Compl. ¶¶ 57-61.) BT INS contends that this court has diversity jurisdiction over the action pursuant to a choice-of-law provision in the contract through which UMass is said to have consented to suit in federal court. The provision reads:

> This Contract shall be construed under and governed by the laws of the Commonwealth of Massachusetts. The contractor agrees to bring any federal or state legal proceedings arising under this Contract in which the Commonwealth or the University is a party, in a court of competent jurisdiction within the Commonwealth of Massachusetts.

(Compl. ¶ 13.)

The defendants filed the motion to dismiss before me under Federal Rule of Civil Procedure 12(b)(1), contending that UMass is an arm of the state and that, as such, the Eleventh Amendment shields it and its Board of Trustees from suit in federal court. The defendants deny that the choice-of-law provision constitutes waiver or consent to suit in federal court.

## II. ANALYSIS

The Eleventh Amendment establishes that federal jurisdiction "shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state." U.S. Const. amend. XI. The Supreme Court has held that "[t]he ultimate guarantee of the Eleventh Amendment is that non-consenting States may not be sued by private individuals in federal court." *Bd. of Trs. of Univ. of*

*Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear . . . that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. . . . [T]his jurisdictional bar applies regardless of the nature of the relief sought."). The Eleventh Amendment "also extends to bar suits against state agents and instrumentalities when the action is in essence one for the recovery of money from the state." *Maysonet-Robles v. Cabrero*, 323 F.3d 43, 48–49 (1st Cir. 2003) (citation omitted).

A. UMass is an "Arm of the State"

The First Circuit has established a two-pronged test for determining whether a higher education institution such as UMass is an "arm of the state" entitled to Eleventh Amendment immunity. *See Fresnius Med. Care Cardiovascular Res., Inc. v. P.R. & Caribbean Cardiovascular Ctr. Corp.*, 322 F.3d 56, 68 (1st Cir. 2003). Courts must first determine whether the Commonwealth intended and structured the entity to "share its sovereignty." *Id.* (instructing courts to consider this question in light of eight factors). If the result of this inquiry is inconclusive, the court must next determine the likelihood that any damages awarded against the entity would be paid from the public treasury. *Id.* ("This analysis focuses on whether the state has

legally or practically obligated itself to pay the entity's indebtedness.").

Judges in this District have consistently held that UMass and its departments and agencies are arms of the state entitled to Eleventh Amendment immunity. *See, e.g.*, *Orell v. UMass Mem'l Med. Ctr., Inc.*, 203 F. Supp. 2d 52, 60 (D. Mass 2002) ("This Court has previously held that [UMass Medical Center], as a part of the University of Massachusetts, is a public institution established under the laws of the Commonwealth and is, accordingly, an 'arm' of the state entitled to Eleventh Amendment immunity." (citation omitted)); *McGee v. UMass Corr. Health*, No. 09-40120-FDS, 2010 WL 3464282, at *2–3 (D. Mass. Sept. 1, 2010) (finding UMass to be an arm of the state after carefully considering the statutory structure establishing and governing UMass); *Cutts v. Dennehy*, No. 09-10902-DPW, 2010 WL 1344977, at *1 (D. Mass. Mar. 30, 2010) ("It is well settled among judges of this court that the University of Massachusetts, its Medical School and the programs of its Medical School are agencies of the Commonwealth."); *see also Schocrylas v. Worcester State Coll.*, No. 06-40278-FDS, 2007 WL 3332818, at *3 n.4 (D. Mass. Oct. 29, 2007) (collecting cases). The First Circuit has not undertaken to disturb this settled conclusion among Judges of the District of Massachusetts. *See Neo Gen Screening, Inc. v. New Eng. Newborn Screening Program*, 187 F.3d 24, 27 (1st Cir. 1999)

(finding the district court's determination that UMass was entitled to Eleventh Amendment immunity "at least colorable and certainly not plain error"); *see also Baum Research & Dev. Co. v. Univ. of Mass. Lowell*, 503 F.3d 1367, 1369–70 (Fed. Cir. 2007) (assuming that UMass is an arm of the state).  Moreover, Massachusetts state courts have consistently held that UMass is an arm of the state.  *See, e.g.*, *Wong v. Univ. of Mass.*, 777 N.E.2d 161, 163 n.3 (Mass. 2002) ("For purposes of the Commonwealth's consent to be sued, the University of Massachusetts and the Commonwealth are 'one and the same party, namely the Commonwealth of Massachusetts.'" (quoting *Hannigan v. New Gamma-Delta Chapter of Kappa Sigma Fraternity, Inc.*, 327 N.E.2d 882, 883 (Mass. 1975)); *see also Schocrylas*, 2007 WL 3332818, at *5 (collecting cases).

I see no reason to depart from the reasoning of these courts and continue to conclude that UMass is an arm of the state for purposes of the Eleventh Amendment.  Eleventh Amendment immunity also bars claims for money damages against the UMass Board of Trustees in an official capacity.  *See Mills v. Maine*, 118 F.3d 37, 54 (1st Cir. 1997).

B. There Was No Consent to Suit in Federal Court

A state can waive Eleventh Amendment immunity "either if [it] invokes [federal court] jurisdiction, or else if the State makes a clear declaration that it intends to submit itself to

[federal] jurisdiction." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-76 (1999). However, "[b]ecause the sovereign's decision to waive such immunity to suit must be 'altogether voluntary,' the 'test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one.'" *Maysonet-Robles*, 323 F.3d at 50 (quoting *Coll. Sav. Bank*, 527 U.S. at 675). Any Eleventh Amendment waiver by a state must be "unequivocally expressed," *Pennhurst State Sch. & Hosp.*, 465 U.S. at 99, and "evince a clear choice to submit its rights for adjudication by the federal courts," *Maysonet-Robles*, 323 F.3d at 52. Neither UMass nor the Commonwealth has unequivocally expressed consent to suit in federal court on claims arising from this contract.

### 1. The Limited Waiver of Immunity by Massachusetts in Contract Claims

To be sure, the Commonwealth of Massachusetts "long ago waived its sovereign immunity against actions brought to enforce obligations it assumed through contracts." *Minton Constr. Corp. v. Commonwealth*, 494 N.E.2d 1031, 1032 (Mass. 1986) (citations omitted); *see also Irwin v. Comm'r of Dep't of Youth Servs.*, 448 N.E.2d 721, 724-25 (Mass. 1983) (tracing the history of the Commonwealth's waiver to suit for contract claims *in state court* back to 1879). However, the Commonwealth's waiver "does not . . . necessarily extend so far as to permit lawsuits against the Commonwealth in *federal* court." *McGuigan v. Conte*, 629 F. Supp.

2d 76, 83 (D. Mass. 2009) (emphasis in original).  The Supreme Court has held:

> Although a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment. . . . [A] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued.  Thus, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in federal court.

*Atascadero State Hosp. & Cal. Dep't of Mental Health v. Scanlon*, 473 U.S. 234, 241 (1985), *superseded in other respects by* Civil Rights Remedies Equalization Amendment of 1986, 42 U.S.C. § 2000d-7 (emphasis in original).

Given the "stringent" test applied to any purported waiver, *id.*, "[i]t appears that Massachusetts has not consented to suit in federal court for contract claims," *McGuigan*, 629 F. Supp. 2d at 83.  This conclusion is supported by both Massachusetts statutory and case law.

The Commonwealth has established legislatively that the superior court "shall have *exclusive* original jurisdiction . . . of claims against the commonwealth."  Mass. Gen. Laws ch. 212, § 3 (emphasis added); *see also* Mass. Gen. Laws. ch. 258, § 12 ("Claims against the commonwealth, except as otherwise expressly provided in this chapter or by any general or special provision of law, may be enforced in the superior court.").  For its part, the Supreme Judicial Court has explained, in the context of the

8

Massachusetts Tort Claims Act, that "[a]pplying our rules governing statutory waiver of governmental immunity, we find in the terms of [chapter 258 of the Massachusetts General Laws], neither an express or a necessarily implicit consent by the Commonwealth to suit in federal courts."  *Irwin*, 448 N.E.2d at 727.

In short, there is no evidence that Massachusetts's general waiver of immunity for contract claims extends to the Eleventh Amendment's protections against suit in federal court.

### 2. There was no Waiver of Immunity in the Contract's Choice-of-Law Provision

BT INS argues that the choice-of-law provision contained in the parties' agreement constitutes express consent by UMass to submit to the jurisdiction of this court.  I conclude, however, that while the provision directs that Massachusetts law governs any dispute arising from the agreement, it contains no "unequivocal" waiver of immunity from suit in federal court.

In order to waive its Eleventh Amendment immunity, a state must do so "by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction."  *Coll. Sav. Bank*, 527 U.S. at 678 (quoting *Edelman v. Jordan*, 415 U.S. 651, 673 (1974)); *see also Pennhurst State Sch. & Hosp.*, 465 U.S. at 99 (stating that a waiver must be "unequivocally expressed").  One of the purposes of this demanding test is to "elimitate[] the danger . . . that

federal courts may mistake a provision intended to allow suit in a State's own courts for a waiver of Eleventh Amendment immunity."  *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 307 (1990).  The Court continued: "Thus, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court*."  *Id.* at 306 (citation omitted) (emphasis in original).  The same "stringent test" applies to purported waivers in contractual agreements.  *See Baum Research & Dev.*, 503 F.3d at 1370–71.

BT INS focuses on the language of the contract's choice-of-law provision stating that "[t]he contractor agrees to bring *any federal or state legal proceedings* arising under this Contract in which the Commonwealth or the University is a party in a court of competent jurisdiction *within the Commonwealth of Massachusetts*."  BT INS contends that the reference to "federal . . . legal proceedings" voluntarily submitted UMass to jurisdiction in federal court.  However, the Supreme Court has found that a state's agreement to comply with federal regulations does not *de facto* constitute a waiver of immunity in federal courts.  *See Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 150 (1981) (*per curiam*).  Moreover, federal claims can be raised and adjudicated in state courts.  *See Hilton v. S.C. Pub. Rys. Comm'n*, 502 U.S. 197, 205 (1991).  Additionally,

reference to a "competent jurisdiction within the Commonwealth of Massachusetts" alone does not waive immunity.  *See Coll. Sav. Bank*, 527 U.S. at 675 (citation omitted); *see also Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1288 (11th Cir. 2003) (finding that a statute permitting a state university "to sue and be sued in all courts of law and equity" does not constitute a waiver of Eleventh Amendment immunity).  At most, the choice-of-law provision begs the question of what court is one of competent jurisdiction.  The contract's choice-of-law provision, however, provides no "persuasive textual evidence that the consent to suit provision encompasses suits in federal court."  *Port Auth. Trans-Hudson*, 495 U.S. at 308.

BT INS relies upon a Federal Circuit case finding that a venue provision, in which the parties "submit[ted] to jurisdiction in the appropriate State *or Federal Courts* of record sitting in the State of Michigan," constituted consent to suit in federal court.  See Baum Research & Dev., 503 F.3d at 1368-70 (emphasis added).  However, in that case, the court found that "the contract terms [we]re clear" because of their explicit reference to submission to the "Federal Courts."  *Id.* at 1371.  Similarly, the Supreme Court found that a bi-state compact containing a statutory consent-to-suit provision waived Eleventh Amendment immunity because the provision stated that venue lay

11

"within a county or judicial district, established by one of said States or *by the United States*, and situated wholly or partially within the Port of New York District."  *Port Auth. Trans-Hudson*, 495 U.S. at 307 (emphasis added).  Reference to "by the United States" was sufficient to waive immunity.  *Id.*

No such similar reference to "Federal courts" or to "judicial districts established by . . . the United States" is present in the contract provision at issue in this case.  The provision does not "unequivocally express[]" a waiver of Eleventh Amendment immunity.

### III. CONCLUSION

For the reasons set forth more fully above, I conclude that the Eleventh Amendment entitles UMass and its Board of Trustees to immunity from suit in federal court and that UMass and its Board of Trustees did not consent to suit in federal court or in any way waive the protections of the Eleventh Amendment.  The motion to dismiss (Dkt. No. 5) is GRANTED.


                                    */s/ Douglas P. Woodlock*
                                    DOUGLAS P. WOODLOCK
                                    UNITED STATES DISTRICT JUDGE